### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Jessica Moe, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br> v. <br><br> Collectibles Management Resources, <br><br> Defendant. | Court No.: <br><br><br> **CLASS ACTION COMPLAINT FOR DAMAGES** <br><br><br> **JURY TRIAL DEMANDED** |

### INTRODUCTION

1.  The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.  Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.  Jessica Moe ("Jessica"), through her attorneys, brings this action to challenge the actions of Collectibles Management Resources ("CMR" or "Defendant")

with regard to attempts by Defendant to unlawfully and abusively collect a debt allegedly owed by Jessica, and this conduct caused Jessica damages.

3. Jessica makes these allegations on information and belief, with the exception of those allegations that pertain to a Jessica, which Jessica alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendant took place in Minnesota.

6. Any violations by Defendant was knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

7. All violations alleged regarding the FDCPA are material violations of the FDCPA as these violations would limit the ability of a hypothetical least sophisticated debtor to make an intelligent choice as to the alleged debt and actions that should be taken to resolve the alleged debt.

8. Through this complaint, Jessica does not allege that any state court judgment was entered against anyone in error, and Jessica does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

9.  Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692(k).

10. This action arises out of Defendant's violations of the FDCPA.

11. Because Defendant does business within the State of Minnesota, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391.

13. At all times relevant, Defendant conducted business within the State of Minnesota and the violations alleged occurred in the State of Minnesota.

## PARTIES

14. Jessica is a natural person who resides in the City of Saint Paul, State of Minnesota.

15. CMR is located in the City of Fresno, State of California.

16. Jessica is a natural person allegedly obligated to pay a debt, and is a consumer, as that term is defined by 15 U.S.C. § 1692a(3).

17. Defendant is a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

18. Defendant is a "person" as that term is defined by Minn. Stat. § 332.31(2).

19.   Defendant is a person engaged in the business of collection for others any account, or bill, and is therefore a "collection agency" as that term is defined by Minn. Stat. § 332.31(3).

## FACTUAL ALLEGATIONS

20.   Sometime on or before November 2, 2017, Jessica is alleged to have incurred certain financial obligations in the amount of $1,529.44 with American Ambulance ("the Debt") related to the purchase of consumer services for personal use.

21.   These financial obligations were primarily for personal, family or household purposes and were therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

22.   On or after November 2, 2017, CMR sent Plaintiff a letter (hereinafter the "CMR Letter").

23.   A true and correct copy of the CMR Letter is attached to this Complaint as Exhibit A.

24.   The CMR Letter was the initial written communication from CMR to Jessica.

### *Failure to Effectively Identify the Creditor*

25.   The CMR Letter was allegedly sent on behalf of some unnamed creditor to collect debt allegedly placed with CMR for collection.

26. The CMR Letter only notes "RE: American Ambulance" and an account number, but does not state whether American Ambulance is the current creditor.

27. The least sophisticated consumer would be unsure what Defendant meant by "re" in the CMR Letter, as it can be interpreted as informing the consumer where the alleged debt originated instead of identifying with certainty who is in fact the current creditor.

28. "To satisfy section 1692g's requirements, the notice Congress required must be conveyed *effectively* to the debtor." *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)) (internal quotations omitted) (emphasis added).

29. "When § 1692g(a) requires that a communication include certain information, compliance demands more than simply including that information in some unintelligible form.") *Janetos v. Fulton Friedman & Gullace, LLP* 825 F.3d 317, 321 (7th Cir. 2016).

30. "It is not sufficient for the debt collector to merely include the name of the creditor in the communication." *Dix v. Nat'l Credit Sys., Inc.*, No. 2:16-CV-3257-HRH, 2017 WL 4865259, at *2 (D. Ariz. Oct. 27, 2017).

31. Only including an alleged creditor on the "re" line of a debt collection letter is insufficient to comply with 15 U.S.C. § 1692g(a)(2) and does not inform the consumer if the alleged creditor in the subject line is in fact the current creditor.

*Id*; *see also Datiz v. International Recovery Associates, Inc.*, Case No. 15-CV-3549, 2016 WL 4148330 (E.D.N.Y. Aug. 4, 2016).

32.   CMR did not meaningfully or effectively convey the identity of the current creditor on the face of the CMR Letter. Consequently, CMR violated 15 U.S.C. § 1692g(a)(2).

### *Defective "g Notice" - Limiting Plaintiff's Rights*

33.   The CMR Letter states in part, "*If you do not recognize the current creditor* and request in writing within 30 days of this notice we will provide you with the name and address of the original creditor if it is different from the current creditor." (emphasis added).

34.   The CMR Letter conditions Plaintiff's right to request the name and address of the original creditor if Plaintiff does not recognize the current creditor.

35.   Section 1692g(a)(5) requires that a debt collector's initial communication contain, "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

36.   Section 1692g(a)(5) does not condition a consumer's right to request the name and address of the original creditor if the consumer does not recognize the current creditor.

37.   The least sophisticated consumer would believe that he or she could only receive the name and address of the original creditor if he or she did not recognize the current creditor.

38.   Coupled with Defendant's failure to meaningfully convey the identity of the current creditor on the face of the CMR Letter, the least sophisticated consumer would be confused and not know exactly what the least sophisticated consumer is entitled to under the plain meaning of the FDCPA.

39.   Providing a statement that conditions Plaintiff's right to receive the name and address of the original creditor upon Plaintiff not recognizing the original creditor does not comply with the plain language of the required statement under § 1692g(a)(5) and is inconsistent with § 1692g.  Consequently, CMR violated 15 U.S.C. § 1692g(a)(5) and 15 U.S.C. § 1692g(b).

### Defective "g Notice" - Limiting Plaintiff's Time to Request Information

40.   The CMR Letter states in part, "If you do not recognize the current creditor and request in writing *within 30 days of this notice* we will provide you with the name and address of the original creditor if it is different from the current creditor." (emphasis added)

41.   The CMR Letter was dated November 2, 2017, but Jessica received the letter sometime after November 2, 2017.

42.   The FDCPA's thirty-day notice requirement begins running from the date of receipt by the consumer, not the date of the notice. *See, e.g., Cavallaro v. Law*

*Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1154 (E.D.N.Y. 1996) (FDCPA validation notice which stated that debtor should dispute debt within 30 days from date of "this notice" rather than stating that debtor should dispute debt within 30 days of receipt of notice violated FDCPA.); 15 U.S.C. § 1692g(a)(3).

43. The CMR Letter impermissibly shortened the time period by which Jessica could request the name and address of the original creditor to less than thirty days. Consequently, CMR violated 15 U.S.C. § 1692g(a)(5) and 15 U.S.C. § 1692g(b).

### *Improper Collection of Interest*

44. The CMR Letter states that Plaintiff owes $163.00 in interest.

45. The inclusion of interest on the CMR Letter inflated the overall amount CMR claimed Plaintiff owed to $1,692.44.

46. On or about December 20, 2017, Plaintiff initiated a call to CMR (the "Call") in response to a voicemail she received from CMR.

47. On the Call, Plaintiff spoke with a representative of Defendant by the name of Sarah Morgan ("Morgan").

48. On the Call, Morgan stated that Plaintiff was being charged 10% per annum on the account CMR was attempting to collect from Plaintiff.

49. On the Call, Plaintiff asked Morgan whether or not Plaintiff ever signed anything to agree to pay 10% per annum on any alleged Debt.

50. On the Call, Morgan acknowledged that Plaintiff did not sign anything agreeing to pay 10% per annum on the alleged Debt.

51. On the Call, Morgan stated that collection companies in California are entitled to collect 10% per annum on an alleged debt.

52. California Civil Code § 3289(b) provides "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

53. On the Call, Morgan further stated that interest of 10% per annum accrued from the date of service of October 8, 2016 that created the alleged Debt.

54. On the Call, Morgan stated that Plaintiff now owed $183.00 in interest.

55. On the Call, Morgan also noted that interest would continue to accrue the longer the file goes unpaid.

56. On the Call, Morgan stated that Plaintiff was being charged $15.29 per month in interest.

57. Interest in the amount of 10% per annum on a claimed about of $1529.44 actually equates to approximately $12.75 per month.

58. On the Call, despite stating that CMR could collect 10% interest per annum upon the alleged Debt, Morgan provided that Plaintiff effectively owed approximately 12% interest per annum though Morgan's calculation of how much interest would be added to the alleged Debt on a monthly basis

59. Plaintiff did not sign a contract with American Ambulance.

60. Plaintiff did not sign a contract with CMR.

61. Plaintiff did not agree to otherwise pay interest to American Ambulance.

62. Plaintiff did not agree to otherwise pay interest to CMR.

63. As of the date of the CMR Letter, Plaintiff did not owe interest in the amount of $163.00 to CMR.

64. As of the date of the CMR Letter, Plaintiff did not owe interest in the amount of $163.00 to American Ambulance.

65. "[E]ven subtle misrepresentations are still violations of § 1692e." *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000).

66. "There exists no *de minimis* exception to FDCPA liability based upon low dollar amounts[.]" *Haney v. Portfolio Recovery Assocs., L.L.C.*, 837 F.3d 918, 932 (8th Cir. 2016).

67. "[D]ebt collectors' false representations about the availability of remedies or amounts owed under state law, like representations of fact, are to be viewed through the unsophisticated-consumer standard and may be actionable pursuant to the FDCPA." *Id.*

68. "Assuming materiality is required, an attempt to collect a debt not owed is a material violation of § 1692f(1). *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 699 (8th Cir. 2017)

69. By attempting to collect interest of $163.00 through the CMR Letter, CMR used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, CMR violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

70. By attempting to collect interest of $163.00 through the CMR Letter, CMR made a false representation concerning the character, amount, or legal status of a debt. Consequently, CMR violated 15 U.S.C. § 1692e(2)(A).

71. By attempting to collect interest of $163.00 through the CMR Letter, CMR threatened to take action that cannot legally be taken or that is not intended to be taken. Consequently, CMR violated 15 U.S.C. § 1692e(5).

72. By attempting to collect interest of $163.00 through the CMR Letter, CMR used an unfair or unconscionable means to collect or attempt to collect any debt. Consequently, CMR violated 15 U.S.C. § 1692f.

73. By attempting to collect interest of $163.00 through the CMR Letter, CMR was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, CMR violated 15 U.S.C. § 1692f(1).

### *Attempted Collection by an Unlicensed Collector*

74. Minn. Stat. § 332.33(1) provides, "Except as otherwise provided in this chapter, no person shall conduct within this state a collection agency or engage within this state in the business of collecting claims for others as defined in sections 332.31 to 332.44, without having first applied for and obtained a collection agency license."

75. As of the date CMR contacted Jessica, CMR did not have a collection agency license as required by Minn. Stat. § 332.33(1).

76. As of the date CMR contacted Jessica, CMR was not permitted to engage in collecting claims for others in the state of Minnesota.

77. As of the date of this Complaint, CMR did not have a collection agency license as required by Minn. Stat. § 332.33(1).

78. As of the date of this Complaint, CMR was not permitted to engage in collecting claims for others in the state of Minnesota.

79. By attempting to collect a debt upon a Minnesota consumer without first obtaining a collection agency license, CMR used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, CMR violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

80. By attempting to collect a debt upon a Minnesota consumer without first obtaining a collection agency license, CMR used an unfair or unconscionable means to collect or attempt to collect any debt. Consequently, CMR violated 15 U.S.C. § 1692f.

81. By attempting to collect a debt upon a Minnesota consumer without first obtaining a collection agency license, CMR was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, CMR violated 15 U.S.C. § 1692f(1).

82. When it initially contacted Jessica, a Minnesota debtor, by mail, CMR fail to include a disclosure on the contact notice, in a type size or font which is equal to or larger than the largest other type of type size or font used in the text of the notice, stating: "This collection agency is licensed by the Minnesota Department of Commerce."

83. By committing a prohibited practice, as defined by Minn. Stat. § 332.37(3) and Minn. Stat. § 332.37(21), CMR used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, CMR violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

84. By committing a prohibited practice, as defined by Minn. Stat. § 332.37(3) and Minn. Stat. § 332.37(21), CMR used an unfair or unconscionable means to collect or attempt to collect any debt. Consequently, CMR violated 15 U.S.C. § 1692f.

### *Damages*

85. Defendant infringed upon Jessica's rights proscribed by Congress to not be subject to abusive, illegal and unfair debt collection practices.

86. Defendant caused an invasion of Jessica's privacy.

87. Defendant caused Jessica emotional distress and embarrassment.

88. Defendant intimidated and harassed Jessica.

### STANDING

89. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a.  a valid injury in fact;

    b.  which is traceable to the conduct of Defendant;

    c.  and is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

90.   In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### *The "Injury in Fact" Prong*

91.   Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

92.   For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  In the present case, Defendant engaged in violative conduct under the FDCPA. Such conduct and attempts to collect a debt are an invasion of Plaintiff's privacy.

93.   For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, it was Plaintiff's personal privacy and peace that was invaded by Defendant's conduct. Plaintiff also suffered emotional distress and embarrassment. Defendant intimidated and harassed Plaintiff.

### The "Traceable to the Conduct of Defendant" Prong

94. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant.

95. In the instant case, this prong is met simply by the fact that the the violative conduct contemplated in this Complaint was initiated and/or sent by Defendant directly, or by Defendant's agent at the direction of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

96. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

97. In the present case, Plaintiff's Prayers for Relief include a request for statutory damages. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

98. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

99. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendant on the stated claims.

**CAUSES OF ACTION**

**CLASS ACTION ALLEGATIONS**

100. Jessica brings this action on her own behalf, and on behalf of all other consumers similarly situated in the United States of America.

101. The proposed classes that Plaintiff seeks to represent are defined as follows:

(1) All persons with addresses within the United States of America; (ii) who were sent a written communication by CMR which was similar to Plaintiff's Exhibit A; (iii) to recover a consumer debt; (iv) in which Defendant does not properly identify the original creditor; (v) and which were not returned undelivered by the United States Postal Service.

(2) All persons with addresses within the United States of America; (ii) who were sent a written communication by CMR which was similar to Plaintiff's Exhibit A; (iii) to recover a consumer debt; (iv) in which Defendant conditions the consumer's right to request within 30 days of the name and address of the original creditor only if the consumer does not recognize the current creditor; (v) and which were not returned undelivered by the United States Postal Service.

(3) All persons with addresses within the United States of America; (ii) who were sent a written communication by CMR which was similar to Plaintiff's Exhibit A; (iii) to recover a consumer debt; (iv) in which Defendant limits the consumer's right to request the name and address of the original creditor to within 30 days of the notice and not 30 days from receipt of the notice; (v) and which were not returned undelivered by the United States Postal Service.

(4) All persons with addresses within the United States of America; (ii) who were sent a written communication by CMR which was similar to Plaintiff's Exhibit A; (iii) to recover a consumer debt; (iv) in which Defendant attempts to collect interest upon an alleged debt; (v) and which were not returned undelivered by the United States Postal Service.

102. For purposes of this claim for relief, the class periods are one year prior to the filing of this Complaint.

103. The classes here are composed of hundreds of persons, if not more, the joinder of which would be impractical. The individual identities of the individual members for each class are ascertainable through Defendant's records or by public notice.

104. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the classes. The questions of law and fact common to the class predominate over questions affecting only individual class members, and include, but are not limited to, the following:

    A)    Whether Defendant violated the FDCPA, and in particular, 15 U.S.C. §§ 1692e, 1992e(10), 1692e(2)(A), 1692e(2)(B), 1692f, 1792f(1), 1692g(a)(2), 1692g(a)(5), 1692g(b);

    B)    Whether members of the classes are entitled to the remedies under the FDCPA;

    C)    Whether members of the classes are entitled to declaratory relief;

    D)    Whether members of the classes are entitled to injunctive relief;

    E)    Whether members of the classes are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the FDCPA;

    F)    Whether the classes are entitled to any other remedies.

105. Jessica will fairly and adequately protect the interests of the classes.

106. Jessica has retained counsel experienced in handling class claims as well as claims involving unlawful collection practices.

107. Jessica's claims are typical of the claims of the classes, which all arise from the same operative facts involving unlawful collection practices.

108. Class actions are a superior method for the fair and efficient adjudication of this controversy.

109. Class-wide damages are essential to induce Defendant to comply with federal law for both of the classes.

110. The interest of class members for both of the classes in individually controlling the prosecution of separate claims against Jessica is small because the maximum statutory damages in an individual FDCPA action is $1,000.00. Management of these claims are likely to present significantly fewer difficulties than those presented in many class claims, e.g. securities fraud.

111. Defendant has acted on grounds generally applicable to the classes, thereby making appropriate final declaratory relief with respect to each class as a whole.

112. Jessica requests certification of a hybrid class for each of the classes, combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

# COUNT I

## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

## 15 U.S.C. §§ 1692 *ET SEQ.*

113. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

114. As a result of each and every violation of the FDCPA, Jessica is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Jessica prays that judgment be entered against Defendant, and Jessica be awarded damages from Defendant, as follows:

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3).

## JURY DEMAND

115. Pursuant to the seventh amendment to the Constitution of the United States of America, Jessica is entitled to, and demands, a trial by jury.

**HYDE & SWIGART**

Date: <u>January 21, 2018</u>                    By:<u>/s/ Anthony P. Chester</u>
                                         Anthony P. Chester
                                         Attorney Number: 0396929
                                         Robert L. Hyde
                                         Attorney Number: 035109X
                                         **HYDE & SWIGART**
                                         120 South 6th Street, Suite 2050
                                         Minneapolis, MN 55402
                                         Telephone:   (952) 225-5333
                                         Facsimile:   (800) 635-6425
                                         Email: <u>tony@westcoastlitigation.com</u>

                                         *Attorneys for Jessica Moe*